UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BILL MULLINS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:14-CV-352 |
| ) | (REEVES/SHIRLEY) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings [Docs. 13 & 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Plaintiff Bill Mullins, Jr. seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On October 29, 2010, Plaintiff protectively filed an application for disability insurance benefits ("DIB") with an alleged onset date of June 22, 2010. [Tr. 93-100, 139]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 49-52, 60-62]. Plaintiff timely filed a request for a hearing, and he appeared before Administrative Law Judge, Keith C. Pilkey, on March 22, 2013 in Morristown, Tennessee. [Tr. 63, 25]. The ALJ issued an unfavorable decision on May 14, 2013. [Tr. 7-24]. Plaintiff filed his appeal of the decision, which the Appeals Council declined to review on June 23, 2014. [Tr. 1-

6].

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on July 28, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2011.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 22, 2010 through his date last insured of March 31, 2011 (20 CFR 404.1571 *et seq*.).
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease with radiculopathy and obesity (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) which involves no climbing of ladders, ropes and scaffolds and no crawling; otherwise, occasional climbing ramps and stairs, balancing, stooping, kneeling and crouching. He should perform no work around hazards or have exposure to vibration including operating vehicles over rough terrain, and no work or reaching above shoulder. He would be limited to unskilled work due to medication side effects.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 15, 1967 and was 43 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 22, 2010, the alleged onset date, through March 31, 2011, the date last insured (20 CFR 404.1520(g)).

[Tr. 12-19].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

3

engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Id. at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

4

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v.

5

Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

On October 29, 2010, Plaintiff protectively filed an application for DIB with an alleged onset date of June 22, 2010. [Tr. 93-100, 139]. Plaintiff's date of birth is November 15, 1967, and he reported completing one year of college. [Tr. 139, 143]. Plaintiff has past relevant work experience as an owner/operator, manager, assistant manager, and salesman of automotive retail stores and repair shops. [Tr. 143]. He reported that he ceased working on June 22, 2010 due to a back injury. [Tr. 142].

### A. *Medical Evidence*

Plaintiff injured his back at work on March 10, 2010 while attempting to lift brake rotors weighing thirty to forty pounds. [Tr. 238, 342]. On March 11, 2010 he sought treatment from Dr. George B. Brooks for "sudden, sharp pain" in his back. [Tr. 342]. Plaintiff was "very stiff"

6

but had no pinpoint tenderness and straight leg raise was negative. [Id.]. X-rays of his spine showed "some osteoarthritis and straightening. There is not any obvious gross, acute abnormalities or decreased disc space." [Id.]. Dr. Brooks scheduled a MRI and instructed Plaintiff to remain off work until the diagnostic testing was complete. [Id.].

The next day, Plaintiff reported to Dr. Nicholas Grimaldi for evaluation of his worker's compensation claim. [Tr. 238]. A MRI of Plaintiff's lumbar spine showed "[d]egenerative disc disease and facet arthropathy with foraminal narrowing bilaterally due to circumferential disc bulge is and facet and ligamentum flavum thickening at all levels from L2 through S1 as described above." [Tr. 240]. Schmorl's nodes with marrow edema were noted at all levels. [Id.]. Dr. Grimaldi explained to Plaintiff that he had "some degenerative disc disease" and had "probably irritated his back at work and he has either sprained or strained his low back." [Tr. 237]. Plaintiff was placed on light duty work and prescribed Mobic, Flexeril, and physical therapy ("PT"). [Id.]. Dr. Grimaldi encouraged Plaintiff to attend PT "as much as possible, learn the exercises from physical therapy and do them everyday for the rest of his life[.]" [Id.]. Plaintiff returned in April 2010 with continued low back pain. [Tr. 236]. Dr. Grimaldi found that "since his leg pain is only occasional and not severe, we do not recommend him undergoing any type of surgical intervention or epidural steroid injections at this time." [Id.]. He was encouraged to continue with PT for another six weeks and lose weight. His work restrictions were continued and Plaintiff was scheduled to be fitted for a back brace, with instructions to only wear the brace when "he is starting to have pain in his back when he is at work." [Tr. 235-36].

A Physical Work Performance Evaluation was conducted by Apex Physical Therapy on June 10, 2010. [Tr. 327-36]. "No major area of dysfunction [was] observed." [Tr. 330]. Plaintiff was found to "be able to do the majority of his jobs requirements[.]" [Tr. 337].

7

However, Dr. Grimaldi evaluated Plaintiff on August 15, 2010 and restricted Plaintiff from "squatting or crouching as well as 2 handed carrying over 60 pounds." [Id.]. Dr. Grimaldi limited Plaintiff to working six hours a day for four weeks and then returning to eight hours a day. [Id.]. He found that Plaintiff could never perform overtime as it would cause "too much stress on his back[.]" Dr. Grimaldi assessed Plaintiff with maximum medical improvement ("MMI") with 0% impairment. [Id.].

Plaintiff returned to Dr. Brooks on July 6, 2010 for "severe back pain without radiculopathy." [Tr. 339]. Dr. Brooks assessed Plaintiff with degenerative disc disease of the lumbar spine with "[f]oraminal narrowing and possible nerve root occlusion intermittently." [Id.]. He noted that Plaintiff was "not in any great distress. He ambulates in without difficulty . . . There is not any pinpoint tenderness along the lumbar spine. He is diffusely tender however. He cannot tell me exactly where it does hurt." [Id.]. On July 6 and 13, 2010, Dr. Brooks penned two letters regarding Plaintiff's treatment history and functional ability. [See Tr. 372-73]. Dr. Brooks noted that he had treated Plaintiff in March and July of 2010 for back pain. [Tr. 372]. He included Plaintiff's diagnosis and assessed that:

> I feel his pain is real. I do not have any reason to suspect that he is malingering, as he has not had a history of this on prior visits with our practice. He has physical findings consistent with the problem he describes.
>
> I do not feel he is capable of returning to full duty, and he would have to have extended periods of rest, reduced periods of standing and sitting without movement, limited lifting, and/or flexing and extending of the trunk. I feel this patient has a 40% total body disability.

[Tr. 373].

Dr. Brooks saw Plaintiff on July 25, 2012 for rib pain after he suffered a fall. [Tr. 409].

8

Dr. Brooks noted Plaintiff's past diagnosis of degenerative disc disease and that Plaintiff "has a form that he needs to have completed for disability application." [Id.]. X-rays of Plaintiff's ribs were normal and he was prescribed Lidoderm patches and encouraged to apply heat to his injury. [Id.].

Dr. Brooks submitted a Medical Source Statement ("MSS") on August 17, 2012. [Tr. 421-22]. He assessed that Plaintiff's condition caused moderate to severe pain and moderate fatigue. [Tr. 421]. He found that Plaintiff would need to take 15 minute breaks every 1 to 2 hours and that he would almost certainly "miss at least half a day of work at least twice a month[.]" [Tr. 422].

Dr. William E. Kennedy conducted a medical examination on September 15, 2010 upon referral of Plaintiff's worker's compensation attorney, Andrew J. Roberto. [Tr. 375]; [see Tr. 122]. Dr. Kennedy diagnosed Plaintiff with a sprain in his lumbar spine and "[m]ultiple level degenerative disc disease of the lumbar spine[.]" [Tr. 377]. Dr. Kennedy assessed that "the severity of the degenerative disc disease of the lumbar spine has led to permanent weakening of the lumbar spine both explaining Mr. Mullin's ongoing pain and increasing the risk for additional injuries to his low back." [Id.]. Dr. Kennedy found Plaintiff was at MMI with a 3% permanent physical impairment. [Tr. 377-79]. He recommended continued PT, diagnostic imaging, therapeutic injections, and medications but found that surgery was unlikely "to lead to any long-term benefit[.]" [Tr. 377-78]. Dr. Kennedy imposed work restrictions of lifting 10 pounds frequently, 20 pounds occasionally, no "repeated bending, stooping, or squatting or working over rough terrain or in rough vehicles." [Tr. 379]. Dr. Kennedy stated Plaintiff should not work at heights, be exposed to vibrations, or work in "conditions such as on his hands and knees or crawling in which his safety and stability would depend on the normal pain-free

9

mobility and strength of his lumbar spine. He should be able to control his posture with respect to sitting or standing and walking." [Id.].

Dr. Thomas Thrush submitted a physical RFC assessment on April 18, 2011. [Tr. 380-88]. He found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, sit, stand, or walk for up to 6 hours in an 8-hour workday, and was unlimited in his ability to push and pull. [Tr. 381]. He found Plaintiff had occasional postural limitations in all categories. [Tr. 382]. Dr. Anita Johnson affirmed this RFC on March 23, 2012. [Tr. 397].

## B. Other Evidence

The ALJ conducted a hearing on March 22, 2013, in which the Plaintiff and vocational expert ("VE"), Norman Hankins, testified. [Tr. 25-46]. The ALJ issued an unfavorable decision on May 14, 2013. [Tr. 7-24]. The ALJ considered Plaintiff's treatment history with Drs. Grimaldi and Brooks, as well as their treating physician opinions. [Tr. 13-17]. The ALJ granted Dr. Grimaldi's assessment that Plaintiff could perform the majority of his work requirements little weight because "the claimant has been found limited to light exertion with more restrictive postural, environmental and manipulative limitations[.]" [Tr. 17]. The ALJ gave great weight to Dr. Brooks's opinion that "the claimant would require limited lifting, and/or flexing and extending of the trunk. However, little weight is given that the claimant is incapable of returning to full duty and would have to have extended periods of rest, reduced periods of standing and sitting without movement and has 40 percent total body disability." [Id.]. The ALJ granted Dr. Brooks's MSS of August 2012 little weight because "it is entirely too restrictive." [Id.]. Dr. Kennedy's opinion was found to be "consistent with the medical evidence of record[,]" and the opinions of Drs. Thrush and Johnson were granted great weight "insofar as it relates to light exertion and occasionally climbing ramps and stairs, balancing, stooping, kneeling and

10

crouching." [Id.].

## V. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred in weighing the medical evidence. Specifically, Plaintiff contends that the ALJ failed to properly apply the treating physician rule to the opinions of Dr. Brooks. The Commissioner responds that the ALJ properly weighed the medical evidence in regards to Plaintiff's treating physicians and that Plaintiff's RFC is supported by substantial evidence.

## VI. ANALYSIS – THE TREATING PHYSICIAN RULE

The Plaintiff argues that the ALJ did not properly apply the treating physician rule to Dr. Brooks. [Doc. 14 at 6-12]. The Court disagrees.

Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine a claimant's RFC. 20 C.F.R. § 404.1527(b). An ALJ will consider "every medical opinion" received and will give controlling weight to the opinions of treating physicians. See 20 C.F.R. §§ 404.1527(c)(2) ("[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992) (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). An ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the SSA "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The agency will consider such evidence as "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a).

Here, the ALJ gave great weight to the portions of Dr. Brooks's opinion that the ALJ found consistent with the objective medical evidence. [See Tr. 17] (granting great weight to Dr. Brooks's opinion that "the claimant would require limited lifting, and/or flexing and extending of the trunk."). The ALJ gave little weight to Dr. Brooks's opinion that "the claimant is incapable of returning to full duty and would have to have extended periods of rest, reduced periods of

standing and sitting without movement and has 40 percent total body disability." [Id.]. The ALJ explained:

> There is no indication Dr. Brooks had [the] benefit of seeing the functional capacity evaluation and appears to have based his limitations on the claimant's subjective complaints (Exhibit 10F). In addition, Dr. Brooks' treatment records do not support such restrictions which show essentially normal examinations. In fact, Dr. Brooks noted on July 6, 2010, the claimant could not tell him exactly where he had pain. Moreover, Dr. Grimaldi, an orthopaedic specialist, indicated the claimant had "0" percent impairment and released him to return to work as noted above and Dr. Kennedy indicated he had a "3" percent permanent impairment which is in sharp contrast to 40 percent total body disability.

[Id.].

The ALJ granted Dr. Brooks's MSS of August 2012 little weight because "it is entirely too restrictive." [Id.]. The ALJ noted that Dr. Brooks "had not treated the claimant since July 2010" and found that his own treatment records did not support his limitations. [Tr. 17-18].[1] The ALJ considered that "Dr. Brooks examined the claimant on only three occasions (March 11, 2010, the day after his work related injury; July 6, 2010 and July 25, 2012)." [Tr. 18]. The ALJ concluded that Dr. Brooks's MSS was "not supported by the preponderance of the evidence, his own records showing essentially normal examinations including no more than conservative treatment[.]" [Id.].

The Plaintiff contends that Dr. Brooks's three opinions of functionality trigger the treating physician rule. The Court agrees. The Court finds that Dr. Brooks is indeed a treating physician regardless of any argument or statement to the contrary. [See Tr. 18, Doc. 16 at 10-12]. Dr. Brooks served as Plaintiff's general practitioner for several years, treating him for

---

[1] The Court notes that this statement is in error. Dr. Brooks treated Plaintiff on July 25, 2012. [Tr. 409]. However, any mistake or error in this regard is harmless because Plaintiff's treatment on July 25, 2012 was for rib pain due to a fall and not for back pain. [Id.]. The examination on July 6, 2010 was the last appointment Plaintiff had with Dr. Brooks regarding his degenerative disc disease. [See Tr. 339].

13

various issues and ailments. [See Tr. 338-66]. However, the Court notes that Plaintiff's treatment records from 2006 until March 11, 2010 did not concern his degenerative disc disease. [See id.]. Dr. Brooks treated Plaintiff only twice for his back injury, on March 11, 2010 and July 6, 2010. [See Tr. 342, 339]. [Tr. 409]. Dr. Brooks did not treat Plaintiff for his degenerative disc disease during the July 25, 2012 examination, and the only reference to Plaintiff's back impairment during that exam was Plaintiff's request for a MSS from Dr. Brooks in furtherance of his disability application. [Tr. 409]. Dr. Brooks issued three opinions as to Plaintiff's functionality, consisting of two very similar letters dated July 6 and 13, 2010 [Tr. 372-73] and Dr. Brooks's MSS of August 17, 2012. [Tr. 421-22]. Therefore, the Court finds that Dr. Brooks is a treating physician requiring either controlling weight or "good reasons" for the weight assigned pursuant to 20 C.F.R. § 404.1527. However, the Court finds that the extent of Dr. Brooks's treatment of Plaintiff's degenerative disc disease is an appropriate factor in considering the weight due his opinions.

The Plaintiff further contends that the ALJ erred in his assessment of Dr. Brooks by failing to grant him controlling weight or provide good reasons for the weight assigned. The Court must disagree. Although the Plaintiff contends otherwise, the ALJ provided "good reasons" for the weight assigned Dr. Brooks by addressing many, if not all, of the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ specifically considered the examining and treating relationship, the length of the treating relationship and frequency of examination, the nature and extent of the treating relationship, the supportability of Dr. Brooks's opinions, their consistency with the record as a whole, his specialization, and other factors, such as Plaintiff's own statements during examination, in determining which portions of Dr. Brooks's opinions were due great weight and which of those were entitled to less. The ALJ noted that Dr. Brooks was a

14

primary care provider and contrasted his opinion with that of Dr. Grimaldi, "an orthopaedic specialist[.]" [Tr. 14, 17]. The ALJ considered the infrequent and few times that Plaintiff was treated for back pain, the inconsistency of Dr. Brooks's functional restrictions with his own treatment records and the opinions of Drs. Grimaldi and Kennedy, Plaintiff's inability to directly pinpoint his pain, and Plaintiff's conservative treatment history. [See Tr. 17-18]. The Court finds that this analysis satisfies agency regulation and is supported by substantial evidence.

The Plaintiff relies on Henley v. Astrue to argue that the ALJ erred in rejecting Dr. Brooks's opinions merely because "anther physician had reached the opposite conclusion." 573 F.3d 263, 266 (6th Cir. 2009). Plaintiff contends that the ALJ's adoption of Dr. Kennedy's opinion was an improper basis for rejecting those of Dr. Brooks. [Doc. 14 at 9]. The Court finds otherwise and relies on the rule adopted by the Sixth Circuit that "[t]he governing regulation states that if the treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record,' it must be given 'controlling weight.'" Hensley, 573 F.3d at 266 (citing 20 C.F.R. § 404.1527(d)(2)). Here, the ALJ did not arbitrarily substitute Dr. Kennedy's opinion for that of Dr. Brooks. The ALJ weighed the medical evidence as a whole and found that Dr. Brooks's opinion did not warrant greater weight due to its lack of support and inconsistency with the medical evidence as a whole. Such an analysis is exactly what is required by agency regulations. It matters not whether the ALJ expressly acknowledged the treating physician rule. He applied the rule in practice, and did so in a manner that makes his reasoning clear to this Court and any other subsequent reviewer.

The Court finds that the ALJ's analysis is supported by substantial evidence as the opinions of Dr. Grimaldi, another treating physician, and Dr. Kennedy, an examining consultant

15

hired for the purpose of defending Plaintiff's claim, [see Tr. 375], support the ALJ's RFC determination and reveal the inconsistencies with Dr. Brooks's more extreme limitations. The Court further concurs with the ALJ that Dr. Brooks's treatment records belie the extreme limitations included in his MSS. [See Tr. 339] (noting that Plaintiff was "not in any great distress. He ambulates in without difficulty . . . There is not any pinpoint tenderness along the lumbar spine. He is diffusely tender however. He cannot tell me exactly where it does hurt."). The Court further concurs with the ALJ's consideration of Plaintiff's relatively limited and conservative treatment, noting that none of Plaintiff's doctors recommended surgery, all encouraged him to make lifestyle changes in order to treat his pain, and Plaintiff sought little treatment for back pain subsequent to 2010. [See Tr. 236] (Dr. Grimaldi finding that Plaintiff did not require surgery or steroid injections and was encouraged to continue PT and lose weight) [Tr. 377-78] (Dr. Kennedy recommending PT and medication but finding surgery unlikely "to lead to any long-term benefit").

Based on this evidence, the Court finds that the ALJ's RFC determination and consideration of the medical evidence is supported by substantial evidence. The ALJ weighed the appropriate factors in 20 C.F.R. § 404.1527(c)(2)-(6) and provided "good reasons" for discounting Dr. Brooks's opinions. The regulations require no more and neither shall this Court. The Plaintiff's argument of error is without merit.

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion for Judgment on the Pleadings **[Doc. 13]** be **DENIED**, and the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED.**

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).